UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

CIVIL ACTION NO.  6:07-241 KKC

ROBERT SNYDER and
ANGELA SNYDER,                                                                    PLAINTIFFS

v.                                              **OPINION AND ORDER**

AMERICAN HONDA MOTOR CO., INC.,
HONDA OF AMERICA MFG., INC., and
HONDA OF SOUTH CAROLINA MFG., INC.,                          DEFENDANTS

* * * * * * *

This matter is before the Court on Defendants' Motion for Summary Judgment [R. 25] and Plaintiffs' Motion to File Report from Ron Huston as Plaintiffs Expert that may be used at Trial [R. 26].

In this products liability case, Plaintiff Robert Snyder seeks damages for injuries sustained after falling from an all-terrain vehicle containing an allegedly defective tie rod.  Due to the technically-complex nature of the subject matter, Plaintiffs must present expert testimony to prove that the all-terrain vehicle was defective.  Defendants argue that Plaintiffs cannot present such testimony at trial through their expert because they failed to provide an expert report as required by Federal Rule of Civil Procedure 26(a)(2)(B).  Plaintiffs responded by submitting the brief letter report prepared by their expert, Dr. R. L. Huston, as their expert report.  Because the brief letter report does not meet the requirements of Rule 26(a)(2)(B), Plaintiffs' expert may not testify at trial and summary judgment is therefore appropriate.

1

I.      **Factual and Procedural Background**

Plaintiff Robert Snyder sustained serious injuries after falling from his all-terrain vehicle while traveling down Route 219 on July 24, 2005.  Mr. Snyder subsequently brought this products liability action in Harlan Circuit Court in July of 2006, and, on July 13, 2007, Defendants removed the action to this Court.  In his First Amended Complaint, Mr. Snyder pled claims of strict liability, negligence, gross negligence, and breach of warranty, and Mrs. Snyder brought a claim for loss of consortium.  All claims in this case arise from Mr. Snyder's accident, and Plaintiffs attribute the accident to a defective tie rod, which allegedly broke while Mr. Snyder was operating the all-terrain vehicle and caused his fall.

Shortly after removal, the parties met to work out a schedule for this litigation, and this Court entered a Scheduling Order on October 29, 2007, reflecting their agreement. [R. 12].  The Scheduling Order set September 18, 2008, as the deadline for Plaintiffs to file Rule 26(a)(2) reports from the expert witnesses they intended to use at trial.  On June 10, 2008, Magistrate Judge Robert Wier conducted a telephonic conference in which he reminded counsel for both parties of the deadlines set forth in the Court's Scheduling Order. [R. 19].  During the conference, counsel for both parties stated that they did not anticipate any problems in completing discovery before the established deadline. [Id.].  Judge Wier also reminded counsel of paragraph 5 of the Scheduling Order, which states that no extensions of the established deadlines shall be granted unless an appropriate motion is filed before the deadline and good cause is shown. [R. 12].

Despite the foregoing, counsel for Plaintiffs made an oral motion to extend the expert witness disclosure deadline during a telephonic conference on November 4, 2008, approximately

2

45 days after the deadline set in the Scheduling Order. [R. 20].  Judge Wier denied the oral motion and advised counsel that such a request would only be considered only upon written motion and that Defendants would be allowed to respond. [Id.].  The telephonic conference precipitated a number of motions, the first of which being Plaintiffs' motion to amend the complaint. [R. 21, 24].  Two days later, Defendants filed the pending motion for summary judgment. [R. 25].  Shortly thereafter, Plaintiffs filed a written motion for an extension of the expert witness disclosure deadline, a motion to strike the memorandum in support of Defendants' motion for summary judgment, and a motion for an extension of time to respond to Defendants' motion for summary judgment. [R. 26, 29, 32].

The Court first responded by denying Plaintiffs' motion to amend the complaint. [R. 37]. The Court denied the motion because it was filed well after the deadline set in the Scheduling Order, Plaintiffs offered no reason whatsoever for the delay, and the Court found that granting the motion would prejudice Defendants. [Id.].  In denying the motion, the Court granted Plaintiffs' motion for an extension of time to respond to Defendants' motion for summary judgment and gave Plaintiffs fifteen days to enter their response.  The following week, the Court denied Plaintiffs' motion to strike the memorandum in support of Defendants' motion for summary judgment on the grounds that the argument presented was best raised in a response to a motion for summary judgment and not a motion to strike. [R. 39].  Although Plaintiffs requested and the Court granted additional time to respond to Defendants' motion for summary judgment, Plaintiffs never responded.

Defendants' motion for summary judgment rests largely, though not exclusively, on Plaintiffs' failure to provide an expert report as required by Rule 26(a)(2)(B).  Plaintiffs' motion

3

for an extension of the expert witness disclosure deadline offers the brief letter report submitted

by their expert, Dr. Huston, as the required report.  To assist the Court in deciding Plaintiffs'

motion, the Court directed Plaintiffs to submit "any and all expert reports" on which they

intended to rely at trial. [R. 39].  Plaintiffs promptly filed the brief letter report prepared by Dr.

Huston, dated July 13, 2007. [R. 40].

## II.        Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence

supporting one or more essential elements of the non-movant's claim.  *Id.* at 322-25.  Once the

movant meets this burden, the opposing party "must set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment

cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply

[to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of

4

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

## III.    Analysis

In this products liability case, jurisdiction is based on diversity of citizenship and thus Kentucky law governs.  *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).  In Kentucky, "the sole question in a products liability case is whether the product is defective." *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 782 (Ky. 1984).  *See also Fritz v. Campbell Hausfeld/Scott Fetzer Co.*, 2007 U.S. Dist. LEXIS 38887, *6, 8 (E.D. Ky. 2007) ("In Kentucky, a party injured by a product can bring suit for that injury under three different theories: (1) breach of warranty under the Uniform Commercial Code; (2) negligence; or (3) strict liability in tort.  . . .  [U]nder all three of the theories asserted by the plaintiff, he is required to prove that the product manufactured by the defendants was defective.") (citations omitted).  Plaintiffs bear

5

the burden of proving that the product is defective, *Ford Motor Co. v. McCamish*, 559 S.W.2d

507, 511 (Ky. 1977), and expert testimony is almost always required to meet this burden.  This is

because Kentucky law requires expert testimony unless the matter falls within the general

knowledge of the ordinary person.  *See Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL

3673118 (W.D. Ky. 2005) (citing William S. Haynes, Kentucky Jurisprudence: Torts § 21-28

(1987)).  Plaintiffs allege that Defendants designed, manufactured, and sold an all-terrain vehicle

with a defective tie rod.  Both parties retained technical specialists who submitted documents in

support of their respective positions regarding the allegedly defective tie rod.  Although the

respective positions are not equally developed, both experts base their conclusions and opinions

on their technical knowledge of engineering mechanics and material properties.[1]  As these

matters fall outside the general knowledge of the ordinary person, Plaintiffs must present expert

testimony to carry their burden of proving that the tie rod was defective.

> Before presenting expert testimony at trial, Rule 26 requires a party to disclose the

identity of the expert and provide the other parties with a written report prepared and signed by

the expert.  Fed. R. Civ. P. 26(a)(2).  The Rule requires the report to contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons
> for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the
> previous ten years;
> (v) a list of all other cases in which, during the previous four years, the witness testified
> as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

---

[1] *See* Dr. Huston's Brief Letter Report, [R. 40, Attach. 1, p. 2] (referencing fracture mechanics and ductility of the material as a factor in the tie rod's failure); Dr. Stevenson's Report, [R. 36, Attach. 1, p. 4-8] (referencing tensile stress loading and dynamic loading, fracture mechanics, and material properties).

Fed. R. Civ. P. 26(a)(2)(B).  As noted by the commentary, the requirements of paragraph (2)(B) were added because "[t]he information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness."  Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Notes to the 1993 Amendments.  By amending the Rule, the Advisory Committee hoped that the detailed reports required by paragraph (2)(B) would allow parties to effectively prepare for or possibly avoid deposition of expert witnesses.  *Id*. ("Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.").

The commentary to Rule 26 contemplates the consequences for failure to provide an expert report, noting that "[r]evised Rule 37(c)(1) and revised Rule 702 of the Federal Rules of Evidence provide an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed."  *Id*.  Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  As the Sixth Circuit has discussed, the commentary to Rule 37 suggests that "harmless" involves an innocent mistake on the part of the non-disclosing party and sufficient knowledge on the part of the other party.  *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003).   Additionally, the potentially sanctioned party bears the burden of proving

7

harmlessness.  *Id.*

Plaintiffs offer the brief letter report prepared by Dr. Huston as the written report required

by Rule 26(a)(2)(B).  The report, in its entirety, states as follows:

> As you requested I have inspected the failed part you sent me.  This is a
> brief letter report summarizing my findings and opinions reached to date based
> upon my inspection.

> Should additional documents or items become available for review or
> inspection the opinions expressed could be modified and/or enhanced.

> Accompanying photographs show various views of the failed part.

> A close inspection of the part shows that there are brittle type fractures
> almost along a diameter of the connecting joint.  The failure does not have the
> characteristic of fatigue failure.

> The seat of the connecting joint has little if any sign of wear.  There are
> however, signs of deformation outside the joint seat.  This may be due to an ill-
> fitting assembly, or due to loading occurring after the brittle fracture failures.

> In view of these findings and observations it is my opinion that the tie rod
> joint failed due to brittle fracture along radial directions of the ring joint.  Had the
> material been more ductile and yielding, the joint would have seated better and
> dramatic failure would then have been avoided.  Also, with better joint seating,
> there would have been less stress on the tie-rod.

> These opinions are expressed to a reasonable degree of engineering
> certainty.

[R. 40, Attach. 1].

Dr. Huston's brief letter report does not meet the explicit requirements of Rule

26(a)(2)(B).  As Dr. Huston states, the letter is a brief report containing only a summary of his

findings and conclusions.  As such, the report lacks the "basis and reasons" for his conclusions as

well as the "data or other information considered by [Dr. Huston] in forming [those

8

conclusions]."[2]  Fed. R. Civ. P. 26(a)(2)(B)(i-ii).  For example, Dr. Huston states that "dramatic

failure" of the tie rod could have been avoided "had the material been more ductile and yielding."

The statement implies some analysis regarding the cause of the tie rod's failure.  The letter,

however, only briefly addresses the mechanism of failure, i.e. "brittle fracture failure", and it

offers nothing to indicate the cause of failure.  This may be due to the fact that Dr. Huston

examined only the failed tie rod and not the all-terrain vehicle to which the tie rod was attached

when it failed.  And, perhaps, this is why Dr. Huston stated that his opinions could be "modified

and/or enhanced" if "additional documents or items become available for review or inspection."

　　　　Further, Dr. Huston's letter cannot be a complete statement of his opinions if Plaintiffs

hope to prevail at trial because it fails to establish a crucial element of Plaintiffs' products

liability case: a defectively designed or manufactured product.  To prove that a product was

defectively designed, Plaintiffs must provide proof of a reasonable alternative design.  *Toyota

Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004).  Dr. Huston's report states that the tie

rod would not have failed had it been more ductile and yielding, but it offers no insight as to

exactly how much more ductile and yielding the tie rod should have been to adequately withstand

expected loads without suffering brittle fracture failure.  Without such details, Plaintiffs cannot

prevail on the merits of their defective design claim at trial.

　　　　Neither can Plaintiffs rely on Dr. Huston's report to establish a manufacturing defect.  To

prove a manufacturing defect, Plaintiffs must show that the tie rod left the hands of the

---

[2]The report tendered to the Court also fails to provide the witnesses qualifications, a list of all other cases in which Dr. Huston has testified as an expert, and a statement of his compensation. [R. 40, Attach. 1].  The Court notes that Plaintiffs had previously provided Defendants with Dr. Huston's qualifications in their Rule 26 Disclosures. [R. 25, Attach. 27-29].

manufacturer in a defective condition because it was not manufactured or assembled in accordance with its specifications. *Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784, 788 (6th Cir. 2005). The report makes a single reference to the product's assembly in the fifth paragraph. After noting the presence of "signs of deformation outside the joint seat", Dr. Huston opined that these "may be due to an ill-fitting assembly, or due to loading occurring after the brittle fracture failures." Aside from the speculative nature of this statement, it is not at all clear that Dr. Huston believes that the joint seat was improperly assembled as opposed to being designed in such a fashion that it functioned poorly when properly assembled. Further, in the following paragraph, Dr. Huston stated that "[h]ad the material been more ductile and yielding, the joint would have seated better and dramatic failure would have been avoided." This demonstrates that, in his opinion, any problems with the joint seating were not due to its assembly by the manufacturer but rather the material properties of its constituent pieces. Accordingly, Dr. Huston's report cannot be used to establish Plaintiffs' manufacturing defect claims.

Because Dr. Huston's brief letter report fails to disclose information required by Rule 26(a)(2)(B), Rule 37(c)(1) prevents him from testifying at trial unless the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). As noted, harmlessness involves an innocent mistake on the part of the non-disclosing party and sufficient knowledge on the part of the other party. *Roberts*, 325 F.3d at 783. Plaintiffs have offered no justification for their failure to provide Defendants with a detailed report as required by Rule 26, and thus Dr. Huston may not testify unless the failure is harmless. Upon review of the record, the Court concludes that Plaintiffs' failure is not harmless because it is not the result of an innocent mistake and

10

Defendants cannot be charged with sufficient knowledge of the non-disclosed information.  The Court first notes that its Scheduling Order put all parties on notice of Rule 26's requirements regarding expert reports by explicitly addressing "Rule 26(a)(2) reports from expert trial witnesses." [R. 12, p. 1].  As discussed by Defendants, Dr. Huston's letter fails to meet four of the six requirements contained in Rule 26(a)(2)(B) and is completely silent on one element of Plaintiffs' defective design claim.  This is because, as Dr. Huston states, the letter is only a brief report summarizing his findings and conclusions.  As such, the letter is not even a colorable attempt to comply with the detailed mandates of Rule 26.  The obvious deficiencies in Dr. Huston's report and Plaintiffs' total silence in the face of Defendants' challenges gave the Court cause for concern, and so it directed Plaintiffs to file "any and all expert reports on which they intend to rely at trial" in the hopes that they would produce an appropriate report or provide some explanation for prior deficiencies. [R. 39].  Plaintiffs, however, filed nothing more than Dr. Huston's brief letter report and offered no justification for its shortcomings. [R. 39].  Based on the foregoing, the Court finds that Plaintiffs' failure to provide a proper report is not a honest mistake but rather an inexcusable disregard for the Rules of Civil Procedure.

The Court also finds that due to the brief and conclusory nature of Dr. Huston's letter, Defendants cannot be charged with knowledge of the non-disclosed information.  Although Plaintiffs correctly state that Defendants had knowledge of Dr. Huston and his involvement in the case, Rule 26 requires more.  As discussed, Rule 26(a)(2)(B) demands detailed written reports so that other parties can prepare for or possibly avoid deposing expert witnesses.  Such depositions can only be prepared for or avoided if the other parties have a comprehensive understanding of the expert's intended testimony.  Dr. Huston's letter provides no such insight.  It contains no

11

analysis supporting his opinions, it barely suggests how Plaintiffs will argue that the tie rod was defectively designed or manufactured, and it provides Defendants with no knowledge of the key aspects of Dr. Huston's intended testimony. Accordingly, the Court concludes that Plaintiffs' failure to comply with Rule 26(a)(2)(B) is not harmless and therefore Dr. Huston cannot testify at trial.[3]

As discussed, Kentucky law requires Plaintiffs to present expert testimony demonstrating that Defendants' product was defective because the subject matter falls outside the general knowledge of the ordinary person. *See Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL 3673118 (W.D. Ky. 2005). Because of Plaintiffs' failure to comply with Rule 26(a)(2)(B), they cannot present such testimony at trial. Accordingly, they are unable to establish an essential element of their case on which they bear the burden of proof and summary judgment is therefore appropriate. *Celotex*, 477 U.S. at 322.

## IV.     Conclusion

For the reasons stated above, the Court finds that Plaintiffs' failure to provide an expert report as required by Rule 26(a)(2)(B) demands exclusion of Plaintiffs' expert pursuant to Rule 37(c)(1) and summary judgment is therefore appropriate.

---

[3]The Court recognizes that Rule 37 allows for a wide range of sanctions and does not always require total exclusion of a witness or testimony. See *Roberts*, 325 F.3d at 783-784. In this case, however, none of Dr. Huston's opinions are properly supported by scientific or technical analysis and thus there is no aspect of his report that complies with the Rule 26's requirements. Therefore, Dr. Huston's testimony must be excluded in its entirety.

**WHEREFORE**, it is hereby ordered that:

1)      Plaintiffs' Motion to File Report from Ron Huston as Plaintiffs Expert that may be used

   at Trial [R. 26] is **DENIED**; and

2)      Defendants' Motion for Summary Judgment [R. 25] is **GRANTED**.

   Dated this 28th day of July, 2009.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

## R. L. HUSTON & ASSOCIATES, INC.
### TECHNICAL & ENGINEERING CONSULTANTS

RONALD L. HUSTON, PH.D., P.E.
THOMAS R. HUSTON, PH.D., P.E.
BARBARA H. HUSTON, ED.D.
DRYVER R. HUSTON, PH.D., P.E.

6242 SAVANNAH AVENUE
CINCINNATI, OHIO 45224
(513) 542-1921
FAX (513) 542-1919

July 13, 2007

John Crockett Carter
Attorney at Law
112 West Central Street
Harlan, KY 40831

RE:   Failed Tie Rod of Four-Wheeler

Dear John,

As you requested I have prepared a brief report (enclosed) summarizing my findings and opinions.

I hope the report is informative and useful.

I am also enclosing a recent resume and photographs of the failed part. Perhaps they will be of use as well.

Keep me posted on how I can help.

Sincerely,

Ronald L. Huston

Enclosure

# R. L. HUSTON & ASSOCIATES, INC.

## TECHNICAL & ENGINEERING CONSULTANTS

RONALD L HUSTON, PH.D., P.E.
THOMAS R. HUSTON, PH.D., P.E.
BARBARA H. HUSTON, ED.D.
DRYVER R. HUSTON, PH.D., P.E.

6242 SAVANNAH AVENUE
CINCINNATI, OHIO 45224
(513)542-1921
FAX (513) 542-1919

July 13, 2007

John Crockett Carter
Attorney at Law
112 West Central Street
Harlan, KY 40831

> RE: **Failed Tie Rod Connector for Four-Wheeler
> Off-Highway Vehicle**

Dear Mr. Carter:

As you requested I have inspected the failed part you sent me. This is a brief letter report summarizing my findings and opinions reached to date based upon my inspection.

Should additional documents or items become available for review or inspection the opinions expressed could be modified and/or enhanced.

Accompanying photographs show various views of the failed part.

A close inspection of the part shows that there are brittle type fractures almost along a diameter of the connecting joint. The failure does not have the characteristic of fatigue failure.

The seat of the connecting joint has little if any sign of wear. There are however, signs of deformation outside the joint seat. This may be due to an ill-fitting assembly, or due to loading occurring after the brittle fracture failures.

In view of these findings and observations it is my opinion that the tie rod joint failed due to brittle fracture along radial directions of the ring joint. Had the material been more ductile and yielding, the joint would have seated better and dramatic failure would then have been avoided. Also with better joint seating, there would have been less stress on the tie-rod.

These opinions are expressed to a reasonable degree of engineering certainty.

Sincerely,

Ronald L. Huston